Nathan M. Smith, (023471)
Nathan@Ariano.legal
ARIANO & ASSOCIATES
2375 E. Camelback Rd.
Suite 600
Phoenix, Arizona, 85016
Tel. 602.666.0050
Fax 602.660.0277
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Amerein Lincoln, a married individual,<br><br>Plaintiff,<br><br>vs.<br><br>The Concentrix Corporation, a New York Corporation doing business in Arizona,<br>Defendant | No.<br><br>**COMPLAINT**<br>(Jury Trial Demanded) |

Plaintiff Amerein Lincoln, through her attorney, alleges as follows:

**SUMMARY OF THE COMPLAINT**

1. Amerein Lincoln, age 36, was fired because she requested FMLA leave after discovering her husband's disability. On February 4, 2016, while working independently at his computer workstation, Jason Lincoln nodded off. His supervisor spoke to him and told Jason he could have a medical condition. Falling asleep at work

was out of character for Mr. Lincoln.  At his supervisor's suggestion, Mr. Lincoln took the following day off to see a doctor.   The supervisor did not suggest that Mr. Lincoln would be disciplined.  The day he saw his doctor he was called by Concentrix's human resources.  Concentrix fired him before he could get home from the doctor, claiming to know nothing of his health problem and claiming that he was fired for falling asleep.

2.	Meanwhile, Amerein Lincoln continued to work at Concentrix as a corporate trainer.  Concerned that Mr. Lincoln's would require her care because of his newly diagnosed disability, Ms. Lincoln went to human resources to request Family and Medical Leave paperwork.  After that request and despite almost 2 years of good performance, Concentrix began reducing her work and ultimately terminated her.  Ms. Lincoln was told trainers were not needed, despite the fact that Concentrix continued to advertise for and hire people in her position.

**JURISDICTION AND VENUE**

3.	Jurisdiction in this Court is authorized by 28 U.S.C. § 1331.  The Court has jurisdiction because the counts alleged arise out of two federal statutes:  the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*

4.	Jurisdiction is authorized by 42 U.S.C. § 2000e-5 because Plaintiff presented her charge to the EEOC within the statute of limitations and received her right to sue letter after its date of December 2, 2016.  This Complaint is filed within 90 days of receipt of the right to sue letter.

5. This Court is an authorized venue for this action because the alleged conduct at issue that gives rise to the Complaint occurred in the State of Arizona, Maricopa County. 28 U.S.C. § 1391(b).

**FACTUAL ALLEGATIONS**

6. Plaintiff is informed and believes and therefore alleges that Defendant The Concentrix Corporation is a New York Corporation registered and doing business in Arizona and employs more than five hundred employees and more than 50 employees within 75 miles of the location where Ms. Lincoln worked.

7. Plaintiff worked as a corporate trainer for Concentrix. She earned approximately $40,000 per year plus a $5,000 bonus in 2015.

8. As early as late September, 2015, Ms. Lincoln's husband, Mr. Lincoln began to experience drowsiness, a loss of energy and weight gain that he would later learn were symptoms of his lifelong condition. The symptoms made it difficult for him to work effectively. Ms. Lincoln noticed that he would begin to nod off while driving home from work.

9. Ms. Jennifer Stein, Mr. Lincoln's supervisor, noticed these changes in Mr. Lincoln too. Ms. Stein made comments to Ms. Lincoln about her concern for Mr. Lincoln's health.

10. These symptoms continued and worsened until on February 4, 2016, Mr. Lincoln was at his workstation with no trainings scheduled for the day. This means his time was flexible and largely self-managed.

11. Plaintiff is informed and believes and therefore alleges that at approximately 9:00 a.m., approximately two hours after Mr. Lincoln's shift started he was approached by his supervisor Ms. Jennifer Stein.  Mr. Lincoln spoke with Ms. Stein and was told that another employee reported seeing him fall asleep at his station.  Mr. Lincoln stated that he was feeling unusually fatigued and exhausted but did not think he had fallen asleep.

12. Plaintiff is informed and believes and therefore alleges that Ms. Stein told Mr. Lincoln she was worried about his health.  She stated that she had mentioned his weight gain to Ms. Lincoln recently.  She stated that falling asleep was inconsistent with his character and work ethic and meant that something was medically "wrong."  Ms. Stein told Mr. Lincoln to go home and rest.  Mr. Lincoln suggested that he would see a doctor the following day and Ms. Stein stated that she thought that was a good idea.  Ms. Stein told Mr. Lincoln he could take the following day off.  Ms. Stein never suggested that she would discipline Mr. Lincoln for this incident.

13. Shortly after Ms. Lincoln spoke to Mr. Lincoln, Ms. Lincoln went to see Ms. Stein in the smoking area to ask about what happened to Mr. Lincoln.   Ms. Stein said she thought there was something medically wrong with Mr. Lincoln, noting his weight gain. Ms. Stein said she let Mr. Lincoln go for the day to see a doctor.  Ms. Lincoln asked Ms. Stein if Mr. Lincoln would be in trouble for sleeping and was reassured that he would not because he had been a valuable employee for years and this was a medical problem.

14. Mr. Lincoln went to see a doctor the next day as planned.  While there, he gave blood, urine and stool samples for testing.  The doctor speculated that it could low

testosterone but would not know until the testing returned. While at the doctor's office, he received a call and voicemail from Ms. Susan Foster at Concentrix.

15. Ms. Lincoln's request to go with her husband to the doctor's office was denied by Concentrix.

16. While traveling home from the doctor's office, Mr. Lincoln returned the phone call from Ms. Susan Foster. Ms. Foster answered and was joined by Ms. Leslie Mercier, the North American Training and Quality Manager for Concentrix  On that call, Ms. Foster told Mr. Lincoln falling asleep violated the Concentrix code of conduct and that he was terminated for violating the code of conduct.

17. Mr. Lincoln protested that he had a medical problem and should not be fired for it. Ms. Foster stated that because there was no proof of a disability on record she was not required to consider Mr. Lincoln's condition. Mr. Lincoln told her he had just received permission to see a doctor about the condition and needed time to provide proof. Ms. Foster still refused to reconsider.

18. Shortly thereafter, Mr. and Ms.. Lincoln learned of his diagnosis. Mr. Lincoln suffers from a tumor on his pituitary gland that will never go away. Fatigue, drowsiness, sleeplessness and weight gain are just a few of the symptoms Mr. Lincoln identified from his serious health condition.

19. The day after learning of his diagnosis, Ms. Lincoln went to human resources to request FMLA paperwork because Mr. Lincoln had a serious medical condition.

20. Almost immediately, Concentrix began to cancel trainings Ms. Lincoln was scheduled to conduct.

21. At the end of March or early April, Concentrix told Ms. Lincoln that her position was eliminated. She was offered a position at less than half the salary. Ms. Lincoln was aware that, at the time, Concentrix was hiring for her corporate trainer position. When confronted with this fact, Ms. Mercier denied that Concentrix was hiring trainers. Ms. Lincoln said she needed to think about the demotion because the compensation was not enough to cover her family's medical expenses.

22. Ms. Lincoln returned to human resources and repeated that there were trainer positions available. Human resources again denied this and told Ms. Lincoln that she had had 2 weeks time to consider whether to accept the demotion.

23. During those two weeks, Ms. Lincoln was denied every request she made to take leave to care for her husband.

24. The last day of this two-week period, on or about April 20, Ms. Lincoln spoke to human resources again about the demotion. Human resources told her that the demotion was no longer available and that she was terminated.

25. Ms. Lincoln went across the hallway and spoke to a person named Vianney in recruiting and was told that there were trainer positions available. Ms. Lincoln walked back across the hallway to human resources with this information. Again, human resources denied that there were positions available and told Ms. Lincoln to return her badge and equipment, which she did.

26. Mr. Lincoln now controls his condition with medication such that he can work without a risk of nodding off. Without medication, Mr. Lincoln will have trouble

sleeping, working, staying awake, concentrating on tasks for long periods, sitting for long periods, and driving.  Unchecked, the tumor could cause blindness.

27.  Ms. Lincoln is aware of at least one other co-employee at Concentrix who fell asleep at his workstation but was not terminated.  Mr. Lincoln is informed and believes and thereon alleges that this co-employee was permitted to go to the doctor.  After diagnosis, he was subsequently provided accommodations for his condition.

28.  Ms. Lincoln is not aware of any other Concentrix employee that was terminated for falling asleep at work, much less as a first offense.

29.  Ms. Lincoln is informed and believes and thereon alleges that Concentrix does not follow a policy of terminating employees who nod off at their workstation, particularly where there is no prior history of discipline.

## DEMAND FOR JURY TRIAL

30.  Plaintiff demands a jury trial on all counts.

## COUNT I

### Associational Disability Discrimination in Violation of the ADA

31.  Plaintiff incorporates by reference all previous allegations as though set forth fully herein.

32.  The ADA prohibits discrimination by employers against employees on the basis of their association with a person perceived to be disabled.  Discrimination can occur "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

33. Plaintiff was during material times and continues to be associated with a "qualified individual" and an "employee," 42 U.S.C. § 12111(4), (8).

34. Defendant is a "covered entity" and "employer" as defined by the ADA. 42 U.S.C. § 12111(2), (5).

35. Defendant discriminated against Plaintiff by terminating her because of her association with a person perceived to have a disability. Defendant terminated her after her husband's supervisor identified a health problem and told him to take a leave to see a doctor. Thus, Concentrix knew Mr. Lincoln had a medical condition when he was terminated and when Ms. Lincoln was terminated.

36. Concentrix and its decision-makers that terminated Ms. Lincoln knew of Ms. Lincoln's marriage to Mr. Lincoln and were aware that she had requested FMLA paperwork in the event she needed leave to care for Mr. Lincoln.

37. Thus, Ms. Lincoln was terminated because she was associated with a person perceived to be disabled.

38. As a direct result, Plaintiff suffered mental and physical harm, shame, embarrassment and lost compensation.

39. Defendant's conduct described above was aggravated, outrageous and guided by an evil mind; accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## COUNT II

### Interference in violation of the FMLA

40. Plaintiff incorporates by reference all previous allegations as though set forth fully herein.

41. Defendant is an "employer" under the FMLA. Defendant has continuously employed fifty or more employees within 75 miles of where Plaintiff worked for the required time period.

42. Plaintiff was at all relevant times an "eligible employee" of Defendant as defined in the FMLA.

43. Plaintiff lawfully exercised her Family and Medical Leave Act rights to request paperwork for a job-protected leave to care for a disabled family member.

44. Defendant wrongfully denied Plaintiff's requests for FMLA leave to care for her husband.

45. Defendant terminated Ms. Lincoln because she attempted to exercise her FMLA rights to request job-protected leave to care for a disabled family member.

46. Additionally, Defendant interfered with Plaintiff's FMLA rights by terminating her because it feared she would exercise her FMLA rights to job –protected medical leave.

47. As a direct result, Plaintiff suffered mental and physical harm, shame, embarrassment and lost compensation.

48. Defendant's conduct described above was aggravated, outrageous and guided by an evil mind; accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## COUNT III

### Retaliation in violation of the FMLA

49. Plaintiff incorporates by reference all previous allegations as though set forth fully herein.

50. Defendant is an "employer" under the FMLA. Defendant has continuously employed fifty or more employees within 75 miles of where Plaintiff worked for the required time period.

51. Plaintiff was at all relevant times an "eligible employee" of Defendant as defined in the FMLA.

52. Plaintiff's request for Family and Medical Leave Act paperwork was an exercise of Plaintiff's FMLA rights.

53. Concentrix terminated Ms. Lincoln in retaliation for her exercise of her FMLA rights to job-protected leave to care for a disabled family member.

54. Additionally, Concentrix terminated Ms. Lincoln in anticipation that she would exercise her FMLA rights in the future.

55. As a direct result, Plaintiff suffered mental and physical harm, shame, embarrassment and lost compensation.

56. Defendant's conduct described above was aggravated, outrageous and guided by an evil mind; accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. For an award of economic damages in an amount sufficient to make Plaintiff whole for past and future lost income and benefits and other economic losses suffered by Plaintiff resulting from Defendants' conduct;

B. For an award of compensatory damages for mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life and other losses incurred by Plaintiff as a result of Defendants' conduct.

C. For an award of punitive damages;

D. For an award of attorneys' fees and related expenses;

E. For an award of prejudgment and post-judgment interest;

F. For an award of Plaintiff's costs of suit; and

G. For such other relief as the Court may deem just and proper.

Dated this 28th day of February, 2017,

**ARIANO & ASSOCIATES**

/s/Nathan M. Smith_____

Nathan M. Smith
Attorney for Plaintiff